DECISION AND JUDGMENT ENTRY
{¶ 1} This is an accelerated appeal from a judgment of the Bowling Green Municipal Court which affirmed the administrative license suspension of defendant-appellant Rita J. Huffman.
 {¶ 2} On January 1, 2005, at approximately 12:29 p.m., appellant was driving south on Interstate 75 when Trooper Nathaniel Townes of the Ohio State Highway Patrol pulled her over for following too closely to the car in front of her. Townes approached appellant and asked for her driver's license and registration. When appellant responded, Townes noticed the odor of an alcoholic beverage coming from inside the vehicle. Townes then asked appellant to remove her sunglasses. When she did, Townes noticed that appellant had been crying and that her eyes were bloodshot and glassy. Townes directed appellant to exit the car but appellant stated that she first wanted to call her attorney, who is also her father. Appellant called her father and spoke to him for several minutes, at which point Townes told appellant to get off of the phone. Appellant then exited her car and told Townes that she was not going to perform any tests. With that, Townes escorted appellant to his patrol vehicle and placed her under arrest for driving under the influence of alcohol. After placing her in the cruiser, Townes retrieved appellant's purse and cell phone from her car and placed it in the front seat of the cruiser.
 {¶ 3} Townes then transported appellant to the police department in Bowling Green. While at the police department, Townes read to appellant the Bureau of Motor Vehicles Form 2255, advising her that she was under arrest for OMVI, requesting that she submit to a breath ("BAC") test, and informing her of the consequences of a refusal to submit. Appellant then asked if she could contact her attorney. Townes stated that she had already spoken to her attorney and again asked appellant if she would take the breath test. Appellant responded that she would not take the test. At the hearing below, appellant testified that she understood the consequences of her refusal. She then signed the form and Townes completed the form (except for the portion noting the address of the police department and the officer's signature) indicating that appellant had refused to submit to a breath test. Townes then returned appellant's purse and cell phone to her, at which time appellant called her attorney/father. While appellant was still on the phone with her attorney, she and the officers left the room where the BAC verifier machine was located and walked to the front of the police station. Appellant then told Townes, while she was still on the phone with her attorney, that she wanted to take the test. Townes told her it was too late and that she had already refused. Appellant again asked to take the test and again Townes told her it was too late. The lower court found that this conversation took place between five and twelve minutes after appellant first told Townes she would not take the breath test. As a result of her refusal to submit to the breath test, an administrative license suspension ("ALS") was imposed, suspending appellant's driver's license for one year.
 {¶ 4} On January 5, 2005, appellant appealed the ALS in the court below pursuant to R.C. 4511.191(H), asserting that she did not refuse to take the BAC test. The lower court held a hearing on the appeal at which appellant, Trooper Townes and John Huffman, appellant's father and attorney, testified to the facts as set forth above. In closing arguments, appellant's counsel asserted that appellant did not in fact refuse to take the BAC test but, rather, invoked her right to consult with her attorney before determining whether to take the test. In the alternative, appellant asserted that if the court found that she technically refused to take the test, she immediately retracted that refusal after consulting with her attorney.
 {¶ 5} On January 25, 2005, the lower court issued a decision and judgment entry in which it found that appellant had refused to submit to the BAC test, that she understood the consequences of that refusal, and that her retraction of that refusal was not "almost immediate." Accordingly, the court denied the appeal. Appellant now challenges that judgment through the following assignments of error:
 {¶ 6} "I. The trial court erred in finding that defendant refused to take a breath test and thus erred in denying her appeal of the administrative license suspension.
 {¶ 7} "II. The trial court erred in finding that defendant's retraction of her alleged refusal was not `almost immediate' and thus erred in denying her appeal of the administrative license suspension."
 {¶ 8} Appellant's assignments of error are related and will be discussed together. R.C. 4511.191, the implied consent statute, provides that a licensee may appeal an ALS to the court in which the licensee will make her initial appearance on the underlying OMVI charge. R.C.4511.191(H)(1). The scope of that appeal is limited to whether certain conditions, predicates to the suspension, have not been met. R.C.4511.191(H)(2). In addition, the person filing the appeal has the burden of proving, by a preponderance of the evidence, that one or more of the specified conditions has not been met. Id. One such condition is "whether the arrested person refused to submit to the chemical test requested by the officer." R.C. 4511.191(H)(1)(d)(i). Refusal to submit to the chemical test under R.C. 4511.191: "appears whenever a preponderance of all the evidence shows that the person who was given the request and advice in the statutory manner and form has thereafter conducted himself in such a way as to justify a reasonable person in the position of the requesting officer to believe that such requested person was capable of refusal and manifested unwillingness to take the test." Andrews v.Turner (1977), 52 Ohio St.2d 31, paragraph one of the syllabus. Whether or not there has been a refusal "is a factual determination to be made by the trial court based upon the facts and circumstances of the case."Siegwald v. Curry (1974), 40 Ohio App.2d 313, 319.
 {¶ 9} Appellant asserts that her statements and conduct cannot be interpreted as a refusal to submit to the BAC test where Trooper Townes denied her her statutory right to speak with an attorney before taking the test.
 {¶ 10} R.C. 2935.20 creates a statutory right to counsel in Ohio and reads in relevant part:
 {¶ 11} "After the arrest, detention, or any other taking into custody of a person, with or without a warrant, such person shall be permitted forthwith facilities to communicate with an attorney at law of his choice who is entitled to practice in the courts of this state, or to communicate with any other person of his choice for the purpose of obtaining counsel. Such communication may be made by a reasonable number of telephone calls or in any other reasonable manner. Such person shall have a right to be visited immediately by any attorney at law so obtained who is entitled to practice in the courts of this state, and to consult with him privately. No officer or any other agent of this state shall prevent, attempt to prevent, or advise such person against the communication, visit, or consultation provided for by this section."
 {¶ 12} In Dobbins v. Ohio Bur. Of Motor Vehicles (1996),75 Ohio St.3d 533, the Supreme Court of Ohio discussed the statutory right to counsel as it relates to ALS proceedings and held at paragraph two of the syllabus: "[i]n the absence of any constitutional violations, when the police violate the statutory right to counsel contained in R.C.2935.20, and the arrestee refuses to submit to the blood-alcohol content test until she effectively speaks with her attorney, the arrestee remains subject to license suspension. By refusing to submit to the test contingent on receiving the advice of counsel, the arrestee has, for the purposes of the implied consent statute, R.C. 4511.191, `refused' to take the chemical alcohol test." It is noteworthy that in the constitutional context, it is well-settled that a person arrested for driving under the influence of alcohol has "no Fifth Amendment right to consult with an attorney prior to deciding whether or not to submit to the test for blood-alcohol content." Id. at 537.
 {¶ 13} Applying Dobbins to the facts of this case, it is clear that appellant refused to take the chemical alcohol test when she asked to speak to her attorney before submitting to the test. The trial court's finding in this regard was therefore supported by competent, credible evidence.
 {¶ 14} Appellant further asserts that if we conclude that she first refused to take the test, she immediately retracted that refusal and, as such, her refusal was not a refusal for ALS purposes.
 {¶ 15} In In re Brooks (1971), 27 Ohio St.2d 66, the Supreme Court of Ohio addressed the issue of an arrestee's retraction of an initial refusal to submit to a chemical test in a case involving an administrative license suspension. In that case, the arrestee was arrested for OMVI and initially refused to submit to a chemical test. Approximately one-half hour later, and one and one-half hours after his arrest, the arrestee indicated that he had changed his mind and would submit to the test. The arresting officer told him it was too late to take the test and that he had already refused. Before the Supreme Court of Ohio, the arrestee argued that because the purpose of R.C. 4511.191 is to aid in securing a conviction for a violation of R.C. 4511.19, and because R.C. 4511.19 provides that the results of a chemical test of the arrestee's blood, breath or urine are admissible into evidence if the bodily substance was withdrawn within two hours of the alleged violation, the driver's license of a person who has been arrested for OMVI cannot be suspended pursuant to R.C. 4511.191 on the basis of a refusal, where the arrestee retracts that refusal and submits to the chemical test within two hours of the alleged offense. The Supreme Court of Ohio did not agree. Initially, the court reiterated that the proceedings under R.C. 4511.191 are civil and administrative in nature and are independent of any criminal proceedings. The court then held at paragraph two of the syllabus:
 {¶ 16} "The suspension, pursuant to R.C. 4511.191, of the driver's license of a motorist, under arrest for the offense of driving a motor vehicle while under the influence of alcohol, for refusing, upon request of a police officer, to submit to a chemical test for alcohol, is not precluded by the fact that after such refusal, but within two hours of the alleged driving violation, the motorist stated that he would submit to the test."
 {¶ 17} In reaching this conclusion, however, the court noted that it was "not faced with a situation where a defendant had almost immediately retracted his refusal and had been denied the test and been told that his belated consent was unacceptable." Id. at 70. Based on that language, case law has developed on the issue of what constitutes an immediate retraction of a refusal. What constitutes an immediate retraction of a refusal is a question of fact, and "due deference must be given to the trial judge's determination of whether a refusal has been timely retracted." Bowman v. McCullion (1985), 21 Ohio App.3d 138, 139. InBowman, the court found no error in the trial court's conclusion that the arrestee had not retracted his refusal when, five minutes after first refusing, the arrestee indicated he had changed his mind and wanted to take the test. In so holding, the court recognized that the Webster's Third New International Dictionary (1961) 1129, defines "immediately" as "without interval of time; without delay."
 {¶ 18} Similarly, in Carroll v. McCullion (Aug. 8, 1991), 10th Dist. No. 91AP3-40, the court upheld the trial court's affirmance of an ALS, finding that the arrestee's recantation 15 minutes after his refusal was not "almost immediate." In that case, the arrestee made two attempts to contact an attorney before responding to the officer's request to submit to the chemical test. After he was unable to contact an attorney, he refused to take the test. Approximately 15 minutes after his refusal, and after the officer had completed the paperwork relating to the refusal, the arrestee changed his mind and wanted to take the test. The officer indicated that it was too late.
 {¶ 19} Finally, in City of Shaker Heights v. Greenfelder (July 16, 1998), 8th Dist. No. 73046, the appellate court reversed a lower court's vacation of an ALS. In that case, the arrestee refused to submit to a chemical test pending the advice of counsel. He then called his girlfriend, who was also an attorney. Approximately one-half hour later, the arrestee's attorney, not his girlfriend, told the arresting officer that the arrestee would rescind any previous refusal and would take the test. The officer indicated that he would not allow the arrestee to then take the test because he had already refused and the officer had already completed the paperwork. The common pleas court vacated the suspension on the basis of R.C. 2935.20, the statutory right to counsel, and after finding that the arrestee's girlfriend never held herself out as the arrestee's attorney. The court of appeals reversed on the basis ofDobbins, supra, finding that when an arrestee refuses to submit to a blood-alcohol content test until after effectively speaking with an attorney, the arrestee remains subject to an administrative license suspension.
 {¶ 20} In consideration of the facts as determined by the lower court and in light of the case law as set forth above, we cannot find that the lower court erred in finding that appellant's recantation of her refusal was untimely. The lower court found that appellant's recantation came five to twelve minutes after she first told Townes she was refusing to take the breath test. Moreover, the recantation came after the officers and appellant had left the room where the BAC verifier machine was located and were escorting appellant to the front desk area, presumably to await her parents. Accordingly, the recantation was not without interval of time or without delay, and the record supports the lower court's finding that the refusal was not timely retracted.
 {¶ 21} The first and second assignments of error are therefore not well-taken.
 {¶ 22} On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgment of the Bowling Green Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
JUDGMENT AFFIRMED.
Handwork, J., Pietrykowski, J., Parish, J. concur.